## No. 12-1901

# United States Court of Appeals

### *for the*

# Fourth Circuit

---

MARCUS MIAL,

*Plaintiff-Appellee,*

*v.*

JENNIFER SHERIN; BRIAN SAYRE; NATHAN FERGUSON;
and NICHOLAS J. ALTOM,

*Defendants-Appellants,*

*and*

STEPHEN O. SIMPSON, In his official capacity as Sheriff; and DEPUTIES
JOHN AND JONE DOES ##1-10, In their individual capacities,

*Defendants.*

*On Appeal from the United States District Court for the Eastern District of
Virginia at Alexandria in Case No. 1:11-CV-00921-GBL-IDD
(Hon. Gerald Bruce Lee, Judge)*

## BRIEF OF PLAINTIFF-APPELLEE

PETER T. ENSLEIN
peter@ensleinlaw.com
LAW OFFICES OF PETER T. ENSLEIN, PC
1738 Wisconsin Avenue, NW
Washington, DC 20007
(202) 329-9949

*Counsel for Plaintiff-Appellee*

JANUARY 4, 2013



UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __12-1901__          Caption: __Marcus Mial v. Jennifer Sherin, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Marcus Mial__
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
　　　　(appellant/appellee/amicus)

1.　　Is party/amicus a publicly held corporation or other publicly held entity?　☐ YES ☑ NO

2.　　Does party/amicus have any parent corporations?　　　☐ YES ☑ NO
　　　If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.　　Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?　☐ YES ☑ NO
　　　If yes, identify all such owners:

i

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: ___/s/ Peter T. Enslein_____    Date: ____September 4, 2012____

Counsel for: ___Appellee_____

___s/ Peter T. Enslein_____        _____September 4, 2012_____
          (signature)                                          (date)

# TABLE OF CONTENTS

*Page*

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ................................................................... iv

STATEMENT OF FACTS ..................................................................... 1

QUESTIONS PRESENTED .................................................................... 8

STANDARD OF REVIEW ..................................................................... 8

SUMMARY OF ARGUMENT .................................................................... 9

ARGUMENT ............................................................................... 10

 I. The Appeal Should Be Dismissed Because The District Court's Opinion That The Qualified Immunity Summary Judgment Record Raised Genuine Issues Of Fact Is Not A Final Decision And Therefore Is Not Appealable. ........................................ 10

 II. The District Court Properly Denied Defendants' Motion For Summary Judgment Because Facts Material To Determining Defendants' Entitlement To Qualified Immunity Were In Dispute ................................................................. 12

  A. Exigent Circumstances ............................................................ 12

  B. Excessive Force ................................................................. 18

 III. The District Court Was Correct When It Held That The Fourth Amendment Rights At Issue Were Clearly Established When Mr. Mial's Claim Arose ....................................... 19

CONCLUSION AND RELIEF REQUESTED ...................................................... 21

CERTIFICATE OF COMPLIANCE ............................................................. 22

CERTIFICATE OF SERVICE ................................................................ 23

# TABLE OF AUTHORITIES

*Page(s)*

## *CASES*

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)......................................................................9

*Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md.*,
   999 F.2d 780 (4th Cir. 1993) .......................................................11

*Brigham City, Utah v. Stuart*,
   547 U.S. 398 (2006)....................................................................14

*Brock v. Entre Computer Ctrs., Inc.*,
   933 F.2d 1253 (4th Cir. 1991) .......................................................9

*Cloaninger v. McDevitt*,
   555 F.3d 324 (4th Cir. 2009) .......................................................15

*Gray-Hopkins v. Prince George's Cnty, Maryland*,
   309 F.3d 224 (4th Cir. 2002) .................................................11, 12

*Hunsberger v. Wood*,
   570 F.3d 546 (4th Cir. 2009) .......................................................14

*Lefemine v. Wideman*,
   672 F.3d 292 (4th Cir. 2012) cert. granted,
   judgment vacated, 133 S. Ct. 9 (U.S. 2012)..................................8

*Michigan v. Fisher*,
   130 S. Ct. 546 (4th Cir. 2009) ................................................14, 17

*Ortiz v. Jordan*,
   131 S.Ct. 884 (2011)....................................................................10

*Payton v. New York.*,
   445 U.S. 573 (1980)....................................................................13

iv

*Pearson v. Callahan*,
    555 U.S. 223 (2009)......................................................................9

*Pleasants v. Town of Louisa*,
    847 F. Supp. 2d 864 (W.D. Va. 2012)........................................15

*United States v. Moss*,
    963 F.2d 673 (4th Cir. 1992) .........................................13, 15, 16

*Winfield v. Bass*,
    106 F.3d 525 (4th Cir. 1997) .............................................11, 12

### ***RULES***

Fed. R. Civ. P. 56 (c)................................................................. 8

## STATEMENT OF FACTS

The district court cogently summarized the facts in the factual background section of its memorandum opinion, which is repeated here verbatim and annotated to the appendix.

On February 14, 2010, Mr. Marcus Mial called 911 to request assistance from the Loudoun County Sheriff's Office because his wife had grabbed a knife and threatened to harm herself with it. A123-24. Mr. Mial told the dispatcher that he needed assistance "in taking a knife from an individual" but, after providing his address, stated, "Never mind. They just gave it up." A502-03. The Sheriff's Office called back a few minutes later to confirm that assistance was no longer needed, and Mr. Mial confirmed that the person no longer had the knife and had not harmed anyone. A503.

Deputy Jennifer Sherin of the Loudoun County Sheriff's Office arrived at the Mial home shortly after the 911 call was placed. A114-15. Deputy Sherin learned from the dispatcher at the Sheriff's Office that the 911 caller cancelled his request for assistance and "confirmed that…the situation [was] under control." A295-96. Mr. Mial answered when Deputy Sherin arrived and knocked at the door, opening the door fully with his two children behind him. A299; A308; A115-16. Mr. Mial told Deputy Sherin that he was the 911 caller but cancelled the request

for assistance, and that he owned the house and lived in it with his wife and children. A301-02; A115-16.

Deputy Sherin asked to "[c]ome in and make sure [that] everyone was safe" twice and made another request to enter the home after being joined at the door by another Loudoun County deputy, Nathan Ferguson. A303; A116-17.  Mr. Mial refused Deputy Sherin's requests, stating that assistance was not needed and that the situation was under control. A116-17.

The parties dispute Mr. Mial's demeanor during his exchange with Deputy Sherin. Mr. Mial stated in his deposition that he maintained a "normal" tone of voice and was not angry during his conversation with Deputy Sherin. A122. Deputy Sherin testified that Mr. Mial "became extremely irate," and Deputy Ferguson testified that Mr. Mial "appeared to be very upset" when Deputy Sherin asked to check on the welfare of the people inside the house. A303; A178.

Mr. Mial stated that he was surprised by how quickly the deputies had arrived and began to complain to the deputies about the Sheriff's Office's response to previous calls for assistance. A118-20; A303-04.  After Deputy Sherin made a comment warning Mr. Mial about ice on his porch, which Mr. Mial took as a slight or reprimand, Mr. Mial slammed his front door. A120-21; A306.

Deputies Ferguson and Sherin walked down the driveway, and Deputy Ferguson called their supervisor, Sergeant Kim Holway. A155-56; A180.  Deputy

Ferguson briefly told Sergeant Holway what had transpired, including the facts that Mr. Mial would not let the officers inside, that Mr. Mial was angry, and that the children did not appear to be distressed. A311; A180; A244. Sergeant Holway testified that the deputies called her "because they didn't know whether they could just leave or not[,]" and that she thought the deputies wanted to leave. A245.

Sergeant Holway told Deputy Ferguson that the deputies should stay there and that she was en route. A311; A245. Sergeant Holway also told Deputy Ferguson that the deputies would need to check the welfare of the other persons involved and that, if Mr. Mial was to open the door, the deputies should not allow the door to be shut again. A180-81; A245.

Deputies Ferguson and Sherin returned to the front door and rang the doorbell. A125; A314-15. Mr. Mial was in the kitchen cooking for his children when he heard the doorbell, and walked out to see who was at the door. A125-26. He could see through the window next to the front door that Deputies Sherin and Ferguson had returned. *Id*. After observing deputies at the door, Mr. Mial returned to the kitchen to continue cooking. *Id*.

The deputies could see that Mr. Mial was moving through the house but would not answer the door. A314-15. After she arrived, Sergeant Holway joined the deputies at the front door, and the deputies told her that no one was answering the door. A315; A181; A246-47. The facts that someone called 911 reporting that

3

a knife needed to be taken away from someone else and that Mr. Mial was
"immediately irate" at the door, according to Deputies Sherin and Ferguson, made
Sergeant Holway suspicious and concerned that someone might be injured inside
the house. A255-56.  Sergeant Holway was aware, however, that Mr. Mial was the
person who placed the 911 call and then cancelled his request for assistance. A256.

    As the deputies continued knocking loudly and persistently, Mr. Mial
decided to call his friend and mentor Mr. Golden "Bud" Kirkland for advice.
A127-28.  Mr. Mial left the kitchen and went to his office, picked up the phone,
and called Mr. Kirkland. *Id*.  The deputies at the door observed Mr. Mial leaving
the kitchen, going into his office and speaking on the phone in his office. A131;
A182; A315-16; A249-50.  Sergeant Holway called the dispatcher to retrieve the
phone number to the Mial residence and then called that number. A181; A249-50.
She left a voice message indicating that the police needed to do a welfare check
and asking Mr. Mial to answer the door. A249-50.

    Deputy Brian Sayre arrived to offer assistance after monitoring the radio
traffic about events at the Mial residence, and Deputy Nicholas Altom arrived after
Deputy Sayre. A222; A252-53.  Sergeant Holway briefed Deputies Sayre and
Altom on the facts that Mr. Mial had placed a 911 call for assistance in taking a
knife from someone but then cancelled his request, confirmed that he did not need
assistance when the dispatcher called him back, answered the door for Deputies

Sherin and Ferguson, "was extremely irate" in complaining about the police presence, shut the door on the deputies, and refused to answer the door again. A223-24; A253.

Sergeant Holway had Deputy Sayre check the perimeter of the house to look for signs of forced entry and asked Deputy Altom to try to contact a neighbor to seek information about the Mial residence and the people living there. A201; A254.

Mr. Mial was on the phone with Mr. Kirkland for approximately 10 minutes while Deputies Sherin and Ferguson continued knocking at the front door. A129-30; A182; A316. Mr. Kirkland advised Mr. Mial to let the deputies inside to conduct their welfare check, and Mr. Mial agreed to open the door. A582. Mr. Kirkland also asked Mr. Mial to leave the phone open so that Mr. Kirkland could hear what was going to happen in the home, and Mr. Mial set the phone down without hanging up. A582.

Deputy Ferguson notified the other deputies over the radio that someone was coming to the door. A226; A202. Mr. Mial opened the door and placed his right foot behind the door to serve as a "doorstop." A132. Mr. Mial made a comment about the show of force and started to comment about his disappointment with the Sheriff's Office when the deputies pushed open the door, pushing back his right foot. A561-63.

It appeared to the deputies that Mr. Mial had begun to shut the door before they pushed the door open and pushed him back. A326; A186; A205. The deputies had not asked to come inside or for Mr. Mial to bring the occupants of the house to the door. A163; A185.  Deputy Ferguson testified that he had told Mr. Mial that Sergeant Holway wanted to speak with him and that Mr. Mial declined to speak with her. A185.

Deputy Ferguson also testified that he attempted to tell Mr. Mial that the deputies could not leave without ensuring that everyone in the house was okay but Mr. Mial continued complaining. *Id*.  Deputy Sherin testified that the deputies did not say anything in response to Mr. Mial's complaints. A163.

Many of the facts about what occurred after Deputies Sherin and Ferguson forced entry are disputed between the parties.

According to Mr. Mial's testimony, Deputy Ferguson pushed Mr. Mial from the door backward, specifically on his upper torso, and Deputy Sherin yelled, "Grab his arms, grab his legs." A572-74.  Mr. Mial yelled, "You are not authorized to come into my home," twice, and saw at least one other deputy enter the home before one of the deputies used a Taser on him. A134-36.  The deputies testified to a physical struggle between them and Mr. Mial before the Taser was used on Mr. Mial.  According to Deputies Sherin and Ferguson, Mr. Mial grabbed both of them,

held them to his chest after they pushed their way inside the house, and attempted to push them out. A167; A187-90.

Deputy Altom testified that he ran into the house when he saw Deputies Sherin and Ferguson push their way in and engage in a physical struggle with Mr. Mial. A205. According to Deputy Altom, Mr. Mial "was getting the better of [Deputies Sherin and Ferguson]," pushing them forward, and Deputy Altom responded by shoving back against Mr. Mial, in his chest, without much effect. A206-08.

Deputy Sayre testified that he ran into the house after Deputy Altom where he found Mr. Mial and the three deputies engaged in a physical struggle. A230-32. Deputy Sayre testified that, when he saw Mr. Mial's children moving toward the struggle, he told them to stop or to stay where they were. A233. According to Deputy Sayre, Mr. Mial had an arm around Deputy Sherin's neck and an arm around Deputy Ferguson's neck and was swinging them around, while Deputy Altom pushed against Mr. Mial near his waist. A233-34. Deputy Sayre could see Deputy Sherin's face and saw that she looked "concerned about her safety." A233-35. Deputy Sayre had his Taser in hand, and Deputy Sherin told him to use it on Mr. Mial. A235. Without giving a warning, Deputy Sayre used the Taser on Mr. Mial, and Mr. Mial was physically incapacitated. A578; A137. Mr. Mial testified that the time between the forcible entry and the use of the Taser was too fast for

7

him to engage in any physical struggle with the officers. A577.  Mr. Kirkland

testified that he heard everything, including the forcible entry and Mr. Mial's child

shouting after Mr. Mial was tased, occur in a matter of seconds. A583.

## QUESTIONS PRESENTED

1.  Whether the appeal should be dismissed because the district court's

opinion that the qualified immunity summary judgment record raised genuine

issues of fact was not a final decision and therefore not appealable?

2.  Was the district court correct when it denied Defendants' motion for

summary judgment because facts material to determining Defendants' entitlement

to qualified immunity were in dispute?

3. Was the district court correct when it held that the Fourth Amendment

right at issue was clearly established when Mr. Mial's claim arose?

## STANDARD OF REVIEW

In reviewing the denial of summary judgment on the issue of qualified

immunity, this Court applies *de novo* the same standard that the district court was

required by law to apply when it considered the motion in the first instance.

*Lefemine v. Wideman*, 672 F.3d 292, 297 (4th Cir. 2012) cert. granted, judgment

vacated, 133 S. Ct. 9 (U.S. 2012).  In order for summary judgment to be granted

the material facts at issue must be undisputed. Fed. R. Civ. P. 56(c).  Furthermore,

in making these determinations "the court must draw any inferences in the light

most favorable to the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991). A genuine issue of material facts exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The standard for the resolution of a qualified immunity defense is two-prong: (1) an inquiry into whether the plaintiff's facts establish the violation of a federal right and (2) the question of whether that aforementioned violated right was "clearly established" at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

## SUMMARY OF ARGUMENT

The district court's opinion is not a final decision and therefore is not appealable. This appeal should be dismissed.

The appeal fares no better on the merits, should the Court consider them. The district court properly denied Defendants' motion for summary judgment because facts material to determining Defendants' entitlement to qualified immunity were in dispute. Finally, the district court correctly found that the Fourth Amendment rights at issue were clearly established when Mr. Mial's claim arose.

# ARGUMENT

## I.

### The Appeal Should Be Dismissed Because The District Court's Opinion That The Qualified Immunity Summary Judgment Record Raised Genuine Issues Of Fact Is Not A Final Decision And Therefore Is Not Appealable.

This interlocutory appeal concerns the district court's decision to deny Defendants' motion for summary judgment on qualified immunity grounds. The court's holding is dispositive of the instant appeal: "The Court Denies Defendants' Motion for Summary Judgment *because genuine issues of material fact remain* regarding whether Defendants violated Plaintiff's constitutional rights in forcibly entering his home without a warrant and using excessive force against him once inside." (emphasis supplied). A657.

Rather than await the jury's resolution of the disputed factual questions, Defendants immediately appealed the district court's order. However, an immediate appeal from the denial of summary judgment on a qualified immunity defense "is not available when," as here, "the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Ortiz v. Jordan*, 131 S.Ct. 884, 891 (2011) (citing *Johnson v. Jones*, 515 U.S. 304, 313 (1995) (district court's determination that qualified immunity summary judgment record raised genuine issues of fact "was not a 'final decision' within the meaning of the relevant statute" and therefore not appealable)). "Where, however, the defendant's

10

entitlement to immunity turns on a factual dispute, that dispute is resolved by the jury at trial." *Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md.*, 999 F.2d 780, 784 (4th Cir. 1993) (citing *Turner v. Dammon*, 848 F.2d 440 (4th Cir.1988)).

At this writing, Mr. Mial's motion to dismiss Defendants' appeal is pending before this Court. Defendants opposed the motion, relying primarily on two cases. Both demonstrate how the instant appeal is unreviewable in its present posture:

> Our jurisdiction to review orders denying a summary judgment motion based on qualified immunity is limited, however, to the review of legal issues. *Johnson v. Jones*, 515 U.S. 304 (1995). Accordingly, 'we possess jurisdiction to consider an appeal from a decision of a district court rejecting a government official's claim of entitlement to qualified immunity to the extent that the official maintains that the official's conduct did not violate clearly established law.' *Winfield v. Bass*, 106 F.3d 525, 529 (4th Cir.1997).

*Gray-Hopkins v. Prince George's Cnty, Maryland*, 309 F.3d 224, 229 (4th Cir. 2002).

Furthermore:

> [T]o the extent that the appealing official seeks to argue the insufficiency of the evidence to raise a genuine issue of material fact- for example, that the evidence presented was insufficient to support a conclusion that the official engaged in the particular conduct alleged- ***we do not possess jurisdiction under § 1291*** . . . .

*Winfield v. Bass*, 106 F.3d 525, 529-30 (4th Cir. 1997) (emphasis supplied).

These cases make clear that an interlocutory appeal for qualified immunity must be limited to the question of whether the rights allegedly violated were well

established. *Id.* Defendants' appeal goes well beyond that question because, at bottom, it improperly asks this court to resolve disputed issues of fact -- issues that can only be decided by a jury.

This appeal is very similar to *Gray-Hopkins*, relied upon by the Defendants in their opposition. 309 F.3d at 229. *Gray-Hopkins* also involved an excessive force claim and a factual dispute as to whether the plaintiff had resisted arrest. *Id.* When defendants in that appeal decided to challenge the qualified immunity summary judgment ruling, this court concluded that it lacked jurisdiction to decide anything but the question of whether the rights at issue were clearly established (where it quickly concluded that the Fourth Amendment was established). *Id.*

Defendants' appeal, as it is not limited to the question of whether the Fourth Amendment constitutional rights at issue were clearly established when the litigation-triggering event occurred, should be dismissed.

## II.

**The District Court Properly Denied Defendants' Motion For Summary Judgment Because Facts Material To Determining Defendants' Entitlement To Qualified Immunity Were In Dispute.**

### A.    Exigent Circumstances

Defendants failed to establish the lack of disputed facts on the exigent circumstances issue.  The district court held the "Defendants are not entitled to qualified immunity as to Plaintiff's unlawful entry claims because Plaintiff has

shown that genuine disputes remain regarding whether Defendants were presented with exigent circumstances justifying their forcible, warrantless entry into Plaintiff's home." A640.

The court gave two reasons for its decision. "First, Plaintiff's constitutional right to be secure in his home against warrantless and forcible intrusion in the absence of exigent circumstances is clearly established." A642. "Second, Plaintiff's Fourth Amendment right to security in his home would have been violated on the facts he has presented in opposition to Defendants' summary judgment motion." A642. The court, quoting *United States v. Moss*, 963 F.2d 673, 678 (4th Cir. 1992), held that "[w]hile warrantless entry into a home may be justified by an emergency or Defendants' 'objectively reasonable belief that an emergency existed that required immediate entry,' the record before the Court does not establish the objective reasonableness of any belief Deputies Sherin and Ferguson might have had that such an emergency existed, or that they even had any such belief at all." A642. The court's analysis of the summary judgment record was correct and its decision should be affirmed.

It is a bedrock principle of the Fourth Amendment that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980). This principle can only be overcome under a very narrow set of circumstances, including the existence of "Exigent

Circumstances." *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006).  Exigent circumstances allowing a warrantless entry into a home exist only when an officer has made a firsthand observation or has concrete background information that demonstrate that a person has been injured or is at imminent risk of being injured. *Michigan v. Fisher*, 130 S. Ct. 546, 547-549 (4th Cir. 2009).

Defendants' motion for summary judgment rested on their argument that the emergency aid exception to the warrant requirement made their warrantless entry into Plaintiff's home proper.  A640-41.  To have won the motion the Defendants were required to prove (using only undisputed facts) that (1) someone in the home was in danger, and that (2) there were facts in existence at the time of entry for the deputies to reasonably believe that person was in danger.  The district court was correct in finding that Defendants failed to make this showing, and their instant brief fails to do that as well.

Defendants cite numerous cases where exigent circumstances were found to have existed, and attempt to draw analogies to the instant case, but all of these cases are easily distinguishable from here because in every case cited by the Defendants there was an identifiable person at risk at the time of entry, whereas here there is not.

Defendants cite in *Hunsberger v. Wood*, 570 F.3d 546 (4th Cir. 2009) the person thought to be in danger was a teenager whose location her parents did not

14

know and whose car was outside the home that the officer entered.  Appellants' Br.
at 13.

Defendants also rely upon *Cloaninger v. McDevitt*, 555 F.3d 324, 334 (4th
Cir. 2009) where the person thought to be in danger at the time of entry was a man
who was threatening suicide.  Appellants' Br. at 15.  However,  the district court
here correctly concluded that the instant "Defendants possessed far less
information that would suggest or support a reasonable suspicion of an exigency
requiring forcible entry into Plaintiff's home" than the officers in *Cloaninger*.
A648.  The court observed that unlike in *Cloaninger*:

> Defendants received no information of an ongoing pattern of domestic
> violence at the Mial residence.  Plaintiff himself was the person who
> placed the 9-1-1 call - not a third party concerned about Plaintiff's
> welfare or the welfare of anyone else in the home.  Deputies Sherin
> and Ferguson knew that Plaintiff was the caller and that he cancelled
> his request for assistance, stating that emergency assistance was no
> longer needed.

A648-49.

Defendants' reliance on *Pleasants v. Town of Louisa*, 847 F. Supp. 2d 864,
870 (W.D. Va. 2012) is also misplaced.  There, the person in danger at the time of
entry was a child whose mother appeared to be drunk and violent.  In *United States
v. Moss*, 963 F.2d 673, 978 (4th Cir. 1992), exigent circumstances were not found
because the officer only suspected that a hypothetical someone was in hypothetical
danger.

15

So who was in imminent danger when the four Deputies entered Mr. Mial's home without a warrant? Was it the children, for whom Mr. Mial prepared dinner while the police amassed in front of his property? A127; A426. Was it his wife, whom the police never asked Mr. Mial to produce? A116-17

Defendants' brief does not answer these questions; it refers only to generalities: "somebody," "an individual or individuals," "the welfare of citizens," "someone in the house," "the safety of the public." Appellants' Br. at 13, 14, 16. Even *ad hoc*, the Defendants are unable to articulate *who* they believed was in danger. It is a truism that emergency aid cannot be administered if there is no emergency, as was the case in *Moss*, 963 F.2d at 678, and as is the case here, there was no identifiable person who needed emergency aid and thus no exigent circumstances. Indeed, the district court suggests that "Deputies Sherin and Ferguson's conduct up until the point of their forcible entry suggests that not even they perceived an emergency inside the home that justified forcible entry." A654.

The record could not support a summary judgment for the Defendants, because there are no undisputed facts that suggested that *anyone* was in imminent danger. Without undisputed exigent circumstances Defendants could not win a motion for summary judgment as a matter of law.

Even if the officers believed that somebody was in danger (though as discussed above it is not clear that they did), the belief would have to be reasonable

16

and supported by either concrete background information or firsthand observations, *Michigan v. Fisher*, 130 S. Ct. 546, 547-549 (4th Cir. 2009), Defendants lacked either. That is to say, in order to win their appeal Defendants need to show: exigent circumstances existed and that given the undisputed facts a reasonable officer would have concluded that someone was in imminent danger.

Defendants offer three reasons that a reasonable officer would have concluded that someone was in imminent danger; none of them are supported by the undisputed facts or by law.  First, there is the question of whether Mr. Mial began closing the door on the deputies the second time they came to his door. Defendants state that "it *appeared* to Sherin that Mial was about to close the door. . . ." Appellants' Br. at 12 (emphasis supplied).  But, Mr. Mial testified that he did not try to close the door.  The fact that the door "appeared" to be closing to Sherin is not an undisputed fact -- it is a point of view.  Mr. Mial's point of view was that the door was not closing. Whether the door was actually closing is a question of fact for a jury to decide.  It could not be used on a summary judgment record to show that the officers reasonably believed someone was in imminent danger.

Second, is the question of the tone of Mr. Mial's voice -- Defendants say it was "extremely irate."  A644.  Significantly, however, Defendants do not argue that the district court was wrong in finding that "'an extremely irate' display by

17

Plaintiff may have supported a reasonable suspicion of exigent circumstances, but the fact of Plaintiff's demeanor is disputed [and] [t]he Court cannot resolve these disputes in Defendants' favor on their summary judgment motion." A644. Defendants' tone of voice exigent circumstances argument goes nowhere.

Third, Defendants contend that by refusing entry into his home Mr. Mial "was not permitting the officers to perform their investigation, thus obstructing justice." Appellants' Br. at 19. The district court properly rejected this contention: "Plaintiff refused to admit the deputies into his home when they requested entry, as was his Fourth Amendment right." A644.

The district court made its position quite clear: "The bottom line is that, based on the facts in the record viewed in the light most favorable to Plaintiff, no reasonable officer would have perceived an emergency at the Mial home requiring immediate and forcible entry at the time Plaintiff opened his door and complained to Deputies Sherin and Ferguson about the Sheriff's Office."

## B.    Excessive Force

The district court correctly held that "Defendants are not entitled to qualified immunity or summary judgment as to Plaintiff's excessive force claims because Plaintiff has shown that genuine disputes remain regarding whether Defendants used objectively unreasonable force against Plaintiff in violation of Plaintiff's

clearly established Fourth Amendment rights." A654. The court gave two reasons for its decision.

"First, Plaintiff's constitutional right to be secure in his person against the unreasonable use of force by police officers in the absence of any crime, any threats to the safety of the officers or others, or any active resistance to or evasion from arrest is clearly established by the Supreme Court decision in *Graham v. Connor*, 490 U.S. 386 (1989), and subsequent decisions by various courts relying on that case." A655. And "[s]econd, Plaintiff's Fourth Amendment right to security in his person in his home would have been violated on the facts he has presented in opposition to Defendants' summary judgment motion." A655. The court concluded that "[v]irtually all of the facts concerning the physical altercation between Plaintiff and Defendants remain in dispute." A656. Significantly, here again, Defendants do not challenge the wisdom of district court's dispositive conclusion on this aspect of their summary judgment motion.

## III.

### The District Court Was Correct When It Held That The Fourth Amendment Rights At Issue Were Clearly Established When Mr. Mial's Claim Arose.

Defendants do not dispute the district court's conclusion that "Plaintiff's constitutional right to be secure in his person against the unreasonable use of force by police officers in the absence of any crime, any threats to the safety of the

officers or others, or any active resistance to or evasion from arrest is clearly established by the Supreme Court decision in *Graham v. Connor*, 490 U.S. 386 (1989), and subsequent decisions by various courts relying on this case." A655. Nor do Defendants seriously challenge the district court's holding that "the case law available to Defendants at the time of their warrantless entry put them on notice of the Fourth Amendment right at issue in this case." A652.

Defendants offer nothing to warrant this Court from retreating from these fundamentally sound holdings of the district court. Defendants erroneously offer that "based on the circumstances of this case, it certainly was not a clearly established right." Appellant's Br. at 21. There, Defendants have conflated the questions of whether the force used was reasonable (a fact based inquiry that this Court lacks jurisdiction to hear, *supra* 10-12) with whether a right was clearly established (a law based inquiry). That is to say, Defendants have improperly raised questions of fact as to whether exceptions to the right existed, and have not rebutted the district court's proper finding that the right itself existed.

## CONCLUSION AND RELIEF REQUESTED

For the foregoing reasons, the Court should either dismiss the appeal or affirm the decision of the district court in all respects.

Respectfully submitted.

*/s/ Peter T. Enslein*
Peter T. Enslein
peter@ensleinlaw.com
Law Offices of Peter T. Enslein, P.C.
1738 Wisconsin Avenue, NW
Washington, DC 20007
202.329.9949

*Attorney for Appellee*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No.** 12-1901        **Caption:** Marcus Mial v Jennifer Sherin, et al.

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[✓]    this brief contains _____4,652_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[✓]    this brief has been prepared in a proportionally spaced typeface using
Word for Mac 2011 _____ [*identify word processing program*] in
14 point Times New Roman font _____ [*identify font size and type style*]; **or**

[ ]    this brief has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

/s/ Peter T. Enslein _____

Attorney for Appellee _____

Dated: January 4, 2013 _____

# United States Court of Appeals
## for the Fourth Circuit

*Marcus Mial v. Jennifer Sherin*, No. 12-1901

### CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by the LAW OFFICES OF PETER T. ENSLEIN, PC, Counsel for Appellee to print this document. I am an employee of Counsel Press.

On **January 4, 2013**, Counsel for Appellee has authorized me to electronically file the foregoing **Brief of Plaintiff-Appellee** with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> ALEXANDER FRANCUZENKO
> alex@cookcraig.com
> COOK CRAIG & FRANCUZENKO, PLLC
> 3050 Chain Bridge Road, Suite 200
> Fairfax, VA 22030
> (703) 865-7480
>
> *Counsel for Defendants-Appellants*

Additionally, a paper copy will be mailed to the above counsel on this date.

Unless otherwise noted, 8 paper copies have been filed with the Court on the same date via U.S. Express Mail.

January 4, 2013

/s/ Robyn Cocho
Counsel Press

23